# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL F. SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-153-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Daniel F. Sanders requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was twenty-six years old at the time of the administrative hearing (Tr. 32). He has an eighth grade education, and no past relevant work (Tr. 32, 59). The claimant alleges he has been unable to work since November 1, 2011, due to head trauma and migraine headaches (Tr. 173).

**Procedural History**

On May 22, 2012, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 140-46). His application was denied. ALJ Jennie L. McLean conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 16, 2015 (Tr. 12-21). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except that he was limited to climate-controlled work environments and could have no concentrated exposure to fumes, odors, dusts, and gases (Tr. 15-16). The ALJ concluded that the claimant was not disabled because there was work

he could perform in the national economy, *e. g.*, dietary aide, counter supply worker, and dining room attendant (Tr. 20-21).

**Review**

The claimant contends that the ALJ erred by failing to properly evaluate his mental impairments. The Court agrees and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant's asthma, headaches, and chronic facial pain were severe impairments, his obesity was a non-severe impairment, and that he had no medically determinable mental impairments. The medical evidence relevant to this appeal reveals that Micheline Wijtenburg, Psy.D., performed a consultative psychological evaluation of the claimant on October 25, 2012 (Tr. 250-53). She noted the claimant had a normal affect and stable mood, showed no objective signs or symptoms of a serious or pervasive psychiatric illness, and had no problem with his working or delayed memory (Tr. 250). Dr. Wijtenburg administered the Montreal Cognitive Assessment ("MoCA"), the results of which indicated a mild cognitive impairment (Tr. 251). She stated the claimant successfully completed several items on the MoCA, but demonstrated difficulty with completing the copy of a cube, subtracting seven from one hundred, language fluency, and uncued memory recall, but noted that he was able to recall words when provided a multiple choice cue (Tr. 251). Dr. Wijtenburg made no diagnoses, but assessed the claimant with a Global Assessment of Functioning ("GAF") score of eighty-five (Tr. 252).

On November 9, 2012, state agency psychologist Dorothy Millican, Ph.D., made the following request: "Please order a WAIS-R and ask for the psychologist to also do

trails A and B and comment on whether they perceive the [claimant] to have a cognitive disorder." (Tr. 254). There is no indication that additional psychological testing was performed. On December 20, 2012, Dr. Millican completed a Psychiatric Review Technique ("PRT") form wherein she noted that the claimant had no medically determinable mental impairment in light of the medical evidence of record and his activities of daily living (Tr. 255-68). She further noted "Although the MoCA showed deficits, these deficits are not explained in [the] file and the provider gave no [diagnosis]. The [claimant] appears to be functioning normally, driving, shopping, socializing, and handling funds." (Tr. 267).

At the administrative hearing, the claimant was represented by an attorney who requested additional psychological testing and noted Dr. Millican's request (Tr. 31). The claimant testified that migraine headaches and memory problems were the main reasons he was unable to work (Tr. 48-49). As to his memory, he stated that he carries a book where he writes down names, telephone numbers, and appointments, and that his symptoms are worsening over time (Tr. 55). He also stated that when he was working as a mechanic, it consistently took him twice the allotted time to complete each of his tasks (Tr. 56).

In her written opinion, the ALJ summarized the claimant's testimony as well as the medical record. At step two, she found that the claimant had severe and non-severe physical impairments, but did not suffer from a medically determinable *mental* impairment (Tr. 14-15). The ALJ gave great weight to Dr. Wijtenburg's opinion, noting she made no diagnosis and found no signs or symptoms of a "serious or pervasive psychiatric illness" (Tr. 15). The ALJ also gave great weight to the state agency psychologist's opinion

because it was consistent with Dr. Wijtenburg's opinion as well as the evidence received at the hearing level, which showed no mental health treatment during the relevant period (Tr. 15).

The claimant argues that the ALJ failed to perform a proper step two analysis, namely that she failed to develop the record as to his mental impairments. The Court first notes that because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe'

and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two, the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four, as further explained below. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

"Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly." *Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To properly apply this special psychological review technique ("PRT"), the ALJ must first determine if the claimant has a "medically determinable mental impairment," 20 C.F.R. § 416.920a(b)(1), and then determine the degree of function the claimant has lost as a result of the impairment by assessing his level of functioning in four broad areas: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and (iv) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). *See also Cruse*, 49 F.3d at 617. Furthermore, the ALJ must specifically document his PRT findings. *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir.

1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988). *See also* 20 C.F.R. § 416.920a(e)(4) ("At the administrative law judge hearing . . . the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)").

In finding that the claimant suffered from no severe mental impairments, the ALJ failed to document his findings related to the four areas of functioning with respect to his alleged cognitive impairment. Further, the ALJ properly noted that Dr. Wijtenburg did not diagnose any mental impairments and that there were no mental health treatment notes in the record; however, the ALJ's finding that there were no "psychological testing or other medically acceptable diagnostic techniques required to show psychological phenomena" is erroneous because Dr. Wijtenburg administered the MoCA and the results suggested a mild cognitive impairment (Tr. 15, 250-53). *See Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative."). The ALJ apparently discounted this evidence when he summarized the evidence then found without explanation that he had no psychologically-based medically determinable impairments. *See, e. g., Fleetwood v. Barnhart*, 211 Fed.

Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment.").

There is also some indication that the claimant did not pursue any further treatment– mental or physical–because he was unable to afford it, which further undermines the ALJ's decision. *See, e.g., Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'"), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7 (*superseded by* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (October 25, 2017);[2] *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("'[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.'"), *quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his

---

[2] Soc. Sec. Rul. 16-3p contains a similar requirement. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *9.

position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

The claimant contends that the ALJ should have recontacted Dr. Wijtenburg for an explanation of the claimant's MoCA results. If the ALJ had any doubts as to any of the evidence, she *could* have recontacted Dr. Wijtenburg to clear it up, *see* 20 C.F.R. § 416.920b(2)(i) ("[I]f after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your medical source."), but she was under no obligation to do so, as the claimant implies. Similarly, the claimant asserts that ALJ was required to order additional psychological testing in light of Dr. Millican's testing request and statement that the MoCA showed deficits which were not explained. But the ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id*. at 1166 [citations omitted]. In this case, there was evidence suggestive of a cognitive impairment

in the record that the ALJ ignored, which was error. The ALJ could have taken any one of several different approaches to remedy this error, including recontacting Dr. Wijtenburg, ordering and analyzing additional testing, *or* sufficiently analyzing Dr. Wijtenburg's opinion already in the record (including the MoCA score) under the appropriate standard. Therefore, the Court finds the ALJ's error lies in her general failure to properly analyze the claimant's alleged cognitive impairment, not in her failure to do so in a particular way.

Because the ALJ failed to properly evaluate the claimant's alleged cognitive impairment, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**